UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TERRENCE WILLIAMS, | ) | Case No. EDCV 08-1378 JC |
| Plaintiff, | ) ) | MEMORANDUM OPINION |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.     SUMMARY**

On October 16, 2008, plaintiff Terrence Williams ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; October 20, 2008 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On September 5, 2006, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 77-80). Plaintiff asserted that he became disabled on November 30, 1999, due to mental illness.[2] (AR 89). The ALJ examined the medical record and heard testimony from plaintiff, who was represented by counsel, and a vocational expert on April 24, 2008. (AR 22-37).

On May 23, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 10-17). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: schizoaffective disorder and cocaine dependence in remission (AR 12); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 13); (3) plaintiff could perform a full range of work at all exertional levels, but was limited to simple, repetitive tasks, was precluded from interactions with the public, and should avoid active hazards (hazardous work at heights or around moving machinery) when using prescribed

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] Plaintiff had previously been found eligible for Supplemental Security Income benefits beginning on November 30, 1999. (AR 10). Plaintiff's benefits were terminated upon his incarceration in or about January 2005. (AR 10). The ALJ found no basis to reopen and revise the January 2005 decision to terminate plaintiff's benefits. (AR 10, 16). Plaintiff does not challenge that determination.

medications (AR 13-15); (4) plaintiff had no past relevant work (AR 15); and (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 15-16).

On August 8, 2008, the Appeals Council denied plaintiff's application for review. (AR 1-3).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///

1   (4) Does the claimant possess the residual functional capacity to
2      perform his past relevant work?  If so, the claimant is not
3      disabled.  If not, proceed to step five.
4   (5) Does the claimant's residual functional capacity, when
5      considered with the claimant's age, education, and work
6      experience, allow him to adjust to other work that exists in
7      significant numbers in the national economy?  If so, the
8      claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

   The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

  **B.** **Standard of Review**

   Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

   To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Medical Evidence

#### 1. Pertinent Evidence

##### a. Medical Evidence

Plaintiff was hospitalized from approximately July 1, 2005 through November 10, 2005, at the Patton State Hospital ("PSH"). (AR 159, 258). A mental status examination conducted at PSH reflects, *inter alia*, that when plaintiff was admitted he: (i) had rapid and pressured speech; (ii) had disorganized thoughts and flight of ideas; (iii) experienced auditory hallucinations; and (iv) was euphoric and anxious. (AR 250-51, 262-63). While at PSH plaintiff was diagnosed with schizoaffective disorder and cocaine abuse in remission. (AR 160).

From approximately January 2006 to December 2007, plaintiff was treated by medical professionals associated with the California Department of Corrections ("CDC"). (AR 13, 167-200, 212-18, 230-43, 269-84, 303-17). During that time, plaintiff was diagnosed with schizoaffective disorder and bipolar disorder (which was considered in fair remission). (AR 171, 174, 194, 200, 213, 216, 234, 236, 239, 240, 280, 313-14). Plaintiff was treated, in part, with Depakote, Zyprexa, Remeron and Wellbutrin. (AR 172, 174, 180, 189, 190-91, 193-95, 200, 213-14, 216, 233-34, 237, 242, 272, 278, 283, 304, 309). Plaintiff's CDC medical records reflect that (i) plaintiff responded well to his prescribed medication (AR 174, 181, 191-92, 200, 213-14, 233, 270, 276-77, 305, 310-11); (ii) his condition remained stable with adjustments in medication dosages (AR 233, 270, 272-73, 305, 309); and (iii) plaintiff consistently followed his medication regimen. (AR 176-77, 179, 180, 187, 192-93). Plaintiff's CDC medical records reflect that plaintiff

complained of periods of delusional thinking, sleep disturbance, mood swings, unexplained fatigue, anxiety, depression, racing thoughts and agitation. (AR 185, 189, 191, 193, 213-14, 233, 236-37, 240-41, 270, 273, 276-79, 304-05, 309-11, 314-15). Plaintiff also reported that during manic episodes he experienced high energy, irrational behavior, loss of appetite and eating, grandiosity and ability to read and control the thoughts of others, as well as auditory and visual hallucinations. (AR 234, 240, 281-82, 314-15). When in a depressive state, plaintiff reported staying in bed with lack of energy and interest, feelings of helplessness and hopelessness, and illegal drug use. (AR 241, 282, 315).

On November 6, 2006, Dr. H.M. Skopec, a non-examining consultative state agency physician, completed a Psychiatric Review Technique form for plaintiff. (AR 201-11). Dr. Skopec found that plaintiff suffered from bipolar disorder which was stabilized with medication. (AR 201, 204). Dr. Skopec opined that plaintiff's impairment was not severe, and that it would result in no restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (AR 209). Dr. Skopec concluded that plaintiff's psychiatric symptoms did not significantly decrease plaintiff's ability to function. (AR 211).

October 10, 2007 treatment notes prepared by Ryan Froelich,[3] a treating clinician/MSW with Victor Valley Behavioral Health Clinic ("VVBHC"), reflect that plaintiff was diagnosed with bipolar disorder most recent episode, severe with

///
///
///

---

[3] While the October 10 notes do not indicate Froelich's title, other records reflect that Froelich is a social worker with Victor Valley Behavioral Health Clinic. (AR 298).

psychotic features, and a schizoaffective disorder, bipolar type, and that plaintiff was assigned a global assessment of functioning ("GAF") rating of 46.[4] (AR 301).

A November 27, 2007 psychiatric evaluation of plaintiff conducted at VVBHC reflects, in pertinent part, that plaintiff demonstrated rapid and pressured speech, and experienced auditory hallucinations, flight of ideas and disorganized thought processes. (AR 293). Plaintiff was diagnosed with a bipolar disorder, and assigned a GAF rating of 50. (AR 293). The signature on the psychiatric evaluation is illegible, but plaintiff suggests that it is that of Dr. Dennis Payne, one of plaintiff's treating psychiatrists at VVBHC. (Plaintiff's Motion at 2; AR 293, 288-91).

In a letter dated March 20, 2008, Merline Reid-Yancy, a licensed clinical social worker at VVBHC, reported that plaintiff was regularly participating in classes to aid in plaintiff's socialization, and attending individual and group therapy to treat his mental condition. (AR 287). Reid-Yancy also stated that plaintiff was compliant with his medication regimen. (AR 287).

### b. The ALJ's Residual Functional Capacity Assessment

In his May 23, 2008 decision, the ALJ summarized the medical evaluations and treatment records and gave "careful consideration [to] all the evidence." (AR 10-17). As noted above, the ALJ determined that while no exertional limitations interfered with plaintiff's ability to work, significant mental symptoms related to

///
///

---

[4] A GAF score is a clinician's judgment of an individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32.

plaintiff's schizoaffective disorder limited plaintiff to performing only simple, repetitive tasks.[5] (AR 13-14).

The ALJ's mental residual functional capacity assessment reflects the ALJ's determination that, although plaintiff had a "significant medical history of emotional symptoms," plaintiff's symptoms were, to a large extent, controlled by a medication regimen that plaintiff consistently followed.[6] (AR 13-14). The ALJ noted that while plaintiff's PSH medical records reflected "[s]ignificantly abnormal clinical signs and symptoms" stemming from plaintiff's diagnosed schizoaffective disorder and cocaine abuse in remission, plaintiff nonetheless showed gradual improvement at PSH once placed on a medical regimen including Risperdal, Ativan, Klonopin, Depakene and Zyprexa. (AR 13). In response to such treatment plaintiff "appeared calmer and more cooperative," and plaintiff's mental status examinations showed "good cognitive function." (AR 13) (citing Ex. 1F [AR 159-61]). Similarly, while the ALJ recognized the multiple and significant symptoms noted throughout plaintiff's CDC medical records, he

---

[5]The ALJ also concluded that due to plaintiff's difficulty with socialization, plaintiff was precluded from work involving interaction with the public. (AR 14). The ALJ also precluded plaintiff from hazardous work at heights or around moving machinery due to plaintiff's complaints of medication side effects including intermittent slurred speech and dizziness. (AR 14).

[6]The ALJ succinctly summarized the impact of plaintiff's schizoaffective disorder on his residual functional capacity as follows:

> The medical evidence reflects that [plaintiff] suffered significant symptoms as a result of the schizoaffective disorder. With the cessation of cocaine use and compliance with prescribed medical regimen, the depressive, manic and psychotic symptoms improved significantly. The intermittent episodes of symptom exacerbation readily responded to medications that were adjusted. Thus, I find that, as a result of the good response to treatment and cessation of cocaine use, [plaintiff] is able to perform simple, repetitive tasks.

(AR 14).

nonetheless concluded that plaintiff's medications effectively controlled such symptoms. (AR 13-14). Indeed, the ALJ stressed that plaintiff's CDC medical records reflect that even with adjustments in medication dosages to address intermittent episodes of symptom exacerbation, plaintiff's "medical regimen continued to be . . . stable." (AR 14) (citing Exs. 2F [AR 162], 6F [AR 212-18], 13F [AR 269-84], and 14F [AR 285-302]). The ALJ also relied on Dr. Skopec's opinion that plaintiff was "stable on medication[]" (AR 15) (citing Ex. 5F [AR 201-11]) – an opinion which is consistent with and corroborated by the aforementioned medical evidence. The ALJ also referenced the March 2008 letter from Merline Reid-Yancy which states that plaintiff remained compliant with his medication regimen, a fact that is also reflected in both plaintiff's CDC and VVBHC medical records. (AR 14, 176-77, 179, 180, 187, 192-93, 300).

### 2.     Analysis

Plaintiff contends that the ALJ failed adequately to evaluate the medical evidence, and that, consequently, the ALJ's decision was not supported by substantial evidence. (Plaintiff's Motion at 2-4). Specifically, plaintiff alleges that the ALJ inadequately addressed and/or ignored findings contained in the November 2007 psychiatric evaluation and the October 2007 treatment notes. (Plaintiff's Motion at 2-3). The Court concludes that the ALJ did not materially err in evaluating the record medical evidence.

The Court rejects plaintiff's contention that the ALJ's failure expressly to address findings in the November 2007 psychiatric evaluation warrants reversal or remand. The ALJ was not required to discuss at length medical evidence which he did not reject, and which was cumulative. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). An ALJ must provide an explanation only when he rejects "significant probative evidence." See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The November 2007 psychiatric evaluation noted, in part, that plaintiff's speech was

rapid and pressured, that plaintiff experienced auditory hallucinations, flight of ideas and a disorganized thought process, and that plaintiff was diagnosed with bipolar disorder and had a GAF rating of 50. (AR 293). Plaintiff fails to demonstrate that such findings constitute significant or probative evidence that is not already accounted for in the ALJ's residual functional capacity assessment.[7]

     First, as noted above, plaintiff's PSH medical records specifically reflect that plaintiff's speech was "rapid" and "pressured" (AR 250, 263), that plaintiff's thought process was "disorganized" and suffered from "flight of ideas" (AR 250-51, 262-63), and that plaintiff experienced auditory hallucinations (AR 251, 263). The ALJ considered plaintiff's PSH medical records when determining residual functional capacity, and thus ultimately did not fail to account for the same findings contained in the November 2007 psychiatric evaluation. (AR 13). Simply because the ALJ did not expressly reference cumulative symptom evidence does not mean he failed to consider such evidence. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]"). The ALJ was not required to discuss every piece of evidence in the record. See Howard, 341 F.3d at 1012 (citations omitted).

     Second, the ALJ's residual functional capacity assessment did not fail to account for limitations, if any, from plaintiff's bipolar disorder diagnosis. The ALJ expressly stated in his decision that CDC medical personnel "diagnosed [plaintiff] with a bipolar disorder that was considered in fair remission." (AR 13). Similarly, in determining residual functional capacity the ALJ accounted for

---

[7]Plaintiff also faults the ALJ for failing to consider the diagnosis of "some form of phobia" in the November 2007 psychiatric evaluation. (Plaintiff's Motion at 2). However, plaintiff misreads the medical evidence which indicates that plaintiff experienced "some euphoria," not that he suffered from any phobia. (AR 293).

10

plaintiff's "significant . . . depressive [and] manic . . . symptoms," to the extent they were not mitigated by plaintiff's medication regimen. (AR 14).

Third, any failure to address the GAF score assigned in the November 2007 psychiatric evaluation does not constitute legal error. GAF scores, standing alone, are not determinative of mental disability for purposes of social security claims. See 65 Fed. Reg. 50746, 50764-65 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (ALJ's failure to address GAF scores specifically did not constitute legal error);[8] see also Purvis v. Commissioner of Social Security Administration, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999) (noting absence of Ninth Circuit authority presented to suggest that GAF score of 50, by itself, required finding of disability); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting claimant's argument that ALJ improperly failed to consider GAF score in assessing residual functional capacity). In any event, the ALJ's residual functional capacity assessment accounts for plaintiff's mental impairments, is not inconsistent with the GAF score assessed in the November 2007 psychiatric evaluation, and is supported by substantial evidence.[9]

Finally, even assuming the ALJ erred in not expressly discussing findings from the November 2007 psychiatric evaluation, such error was harmless. Neither the state agency doctor nor the doctor who prepared the November 2007

---

[8] The court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a)).

[9] As noted above, in determining plaintiff's residual functional capacity, the ALJ relied in part on Dr. Skopec's opinion, which itself was supported by substantial evidence. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[R]eports of [a] nonexamining advisor . . . may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."). In fact, the ALJ's residual functional capacity assessment was more restrictive than that suggested by Dr. Skopec's opinion. (AR 15).

psychiatric evaluation opined that plaintiff could not work for any twelve-month period.  See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (in upholding the Commissioner's decision, the Court emphasized: "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled"); accord Curry v. Sullivan, 925 F.2d 1127, 1130 n.1 (9th Cir. 1990) (upholding Commissioner and noting that after surgery, no doctor suggested claimant was disabled).

The Court also rejects plaintiff's contention that reversal or remand is warranted due to the ALJ's alleged failure to address findings in the October 2007 treatment notes that plaintiff was diagnosed with bipolar disorder and assigned a GAF rating of 46.  As noted above, in order to meet his burden to demonstrate that he is disabled, it was incumbent upon plaintiff to submit medically acceptable clinical and/or laboratory findings from an acceptable medical source.  See 20 C.F.R. §§ 416.908, 416.912(c), 416.913(a), 416.928.  The October 2007 treatment notes of a social worker are not acceptable sources of medical evidence, as the social worker is neither a physician nor a licensed psychologist.  See 20 C.F.R. § 416.913(a) (listing acceptable medical sources).  Accordingly, the ALJ was not required to explain his decision to exclude any findings contained in the report. See Vincent, 739 F.2d at 1394-95.

In light of the foregoing, a remand or reversal on this basis is not warranted.

**B.    The ALJ Did Not Fail Properly to Consider the Effects of Plaintiff's Medication**

Plaintiff contends that the ALJ failed properly to consider any limitations on plaintiff's residual functional capacity from plaintiff's use of prescription medication (*e.g.*, Wellbutrin, Depakote, Cogentin and Zyprexa).  (Plaintiff's Motion at 4-6).  The Court disagrees.

First, the Court rejects plaintiff's contention that increases in dosages of plaintiff's prescribed medication necessarily suggest that plaintiff's symptoms

were not, as the ALJ determined, stabilized by plaintiff's medication regimen. The ALJ determined that plaintiff's symptoms "improved significantly" with medication, and that while plaintiff's medical regimen was adjusted to address "intermittent episodes of symptom exacerbation," plaintiff responded well to such adjustments, and his condition remained stable. (AR 14). To the extent such evidence was susceptible to more than one rational interpretation, it was the prerogative of the ALJ to resolve any conflict. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001). This Court cannot second-guess the ALJ's decision in this respect. Andrews, 53 F.3d at 1039-40; accord Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). It was appropriate for the ALJ to rely on Dr. Skopec's adequately supported finding that plaintiff was stable on medication, rather than adopting plaintiff's currently asserted lay assessment of the medical evidence. See Gonzalez Perez v. Secretary of Health & Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician"); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (ALJ may not substitute his interpretation of laboratory reports for that of a physician); Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct.15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.").

Second, the Court also rejects plaintiff's contention that the ALJ erroneously failed to consider side effects from plaintiff's medication. A claimant bears the burden of demonstrating that his use of medications caused a disabling impairment. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985) (claimant failed to meet burden of proving medication impaired his ability to work because he produced no clinical evidence). The only evidence plaintiff points to in support of his contention is a passing reference in VVBHC physician progress notes that plaintiff experienced problems with finger movement. (Plaintiff's Motion at 5) (citing AR 290). Plaintiff offers no objective evidence that his medication

affected him in the way he claims, let alone that it interfered with his ability to work. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (ALJ need not consider side effects that were not "severe enough to interfere with [plaintiff's] ability to work.").

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.[10]

### C. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d

---

[10] Plaintiff appears to suggest that the ALJ's decision is based on legal error because the ALJ failed to consider all possible side effects related to plaintiff's medication. (Plaintiff's Motion at 5-6). Plaintiff's argument has no merit. The ALJ was not required to address undocumented medication side effects. See Miller, 770 F.2d at 849 (ALJ properly rejected allegations of impairment from medication side effects where plaintiff produced no clinical evidence that narcotics use impaired his ability to work); Osenbrock, 240 F.3d at 1164.

1155, 1160 (9th Cir. 2008) (citations omitted).  The only time this standard does not apply is when there is affirmative evidence of malingering.  Id.  The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling ("SSR") 96-7p.[11]  Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment.  Burch, 400 F.3d at 681.

### 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of plaintiff's subjective complaints.  (Plaintiff's Motion at 6).  The Court disagrees.  The ALJ presented clear and convincing reasons for discounting plaintiff's statements and testimony, and thus did not err in his assessment of plaintiff's credibility.

///

---

[11] Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  Massachi v. Astrue,  486 F.3d 1149, 1152 n.6 (9th Cir. 2007) (citing SSR 00-4p).

15

First, to the extent plaintiff suggests that the ALJ failed completely to consider plaintiff's subjective complaints, that assertion is belied by the record. The ALJ discussed in great detail plaintiff's subjective complaints, and noted that plaintiff's schizoaffective disorder could reasonably give rise to the asserted symptoms. (AR 15).

Second, the ALJ could properly discredit plaintiff's subjective complaints due to internal conflicts within plaintiff's own statements and testimony. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); see also Fair, 885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain testimony based on contradictions in plaintiff's testimony). In December 2006 plaintiff indicated that he planned to "work on the side" while receiving Social Security benefits. (AR 14, 241, 282, 315). In March 2007 plaintiff stated that he "wanted to work but would wait until he received a response to his application for supplemental security income benefits." (AR 15 (citing Ex. 13F at 8 [AR 276]), 272). The ALJ properly concluded that such statements are inconsistent with plaintiff's allegation that significant subjective symptoms prevent him from working. (AR 15).

Finally, an ALJ may discredit a plaintiff's subjective symptom testimony in part based on conflicts with objective medical evidence. Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). Here, the ALJ reasonably concluded that plaintiff's subjective symptoms did not limit plaintiff's ability to work since they were sufficiently managed by plaintiff's medication. (AR 15).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

1  **D.   The ALJ Posed Complete Hypothetical Questions to the**
2  **Vocational Expert**

3  Plaintiff contends that a reversal or remand is appropriate because the ALJ
4  erroneously omitted from his hypothetical questions posed to the vocational expert
5  evidence of GAF scores assigned to plaintiff by clinicians at VVBHC, and
6  plaintiff's alleged difficulty in moving his fingers due to a medication side effect.
7  (Plaintiff's Motion at 8).  The Court disagrees.

8  A hypothetical question posed by an ALJ to a vocational expert must set out
9  all the limitations and restrictions of the particular claimant.  Light, 119 F.3d at
10 793 (citing Andrews, 53 F.3d at 1044); Embrey v. Bowen, 849 F.2d 418, 422 (9th
11 Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out *all*
12 the limitations and restrictions of the particular claimant . . . .") (emphasis in
13 original; citation omitted).  However, an ALJ's hypothetical question need not
14 include limitations not supported by substantial evidence in the record.
15 Osenbrock, 240 F.3d at 1163-64 (citation omitted).

16 As discussed above, plaintiff offered no objective evidence to support a
17 finding that any of his medications impacted the functioning of his fingers.  In
18 addition, plaintiff's GAF scores are not determinative of mental disability for
19 social security purposes.  Accordingly, the ALJ properly omitted such evidence
20 from the hypothetical questions posed to the vocational expert.

21 A remand or reversal on this basis is not warranted.

22 **V.   CONCLUSION**

23 For the foregoing reasons, the decision of the Commissioner of Social
24 Security is affirmed.

25 LET JUDGMENT BE ENTERED ACCORDINGLY.

26 DATED: January 11, 2010

27                                        /s/
   _____
28                              Honorable Jacqueline Chooljian
                                UNITED STATES MAGISTRATE JUDGE